James D. Riddet, Esq. (SBN 39826)
jriddet@bmkattorneys.com
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700
Facsimile  (949) 369-3701

Attorneys for Defendant
Mark Rettenmaier

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>MARK A. RETTENMEIER,<br><br>Defendant | Case No. SA CR 14-0188 CJC<br><br>REPLY OF DEFENDANT MARK A. RETTENMAIER TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE BASED ON ILLEGAL SEARCH OF DEFENDANT'S COMPUTER BY PERSONNEL OF BEST BUY (ECF NO. 80); EXHIBIT FILED CONCURRENTLY UNDER SEAL<br><br>Date:  May 23, 2016<br>Time:  9:00 am<br>Courtroom:  9B |

# TABLE OF CONTENTS

Table of Contents ............................................................ i

Table of Authorities ........................................................ ii

I.    Private Person Search Issue ....................................... 1

II.   Further Evidence Supporting Defendant's Motion ........................... 1

Conclusion ................................................................. 10

1

2

# TABLE OF AUTHORITIES

3

4
United States v. Gumerlock, 590 F.2d 794 (9th Cir.)  (cert. denied
441 U.S. 948, 99 S.Ct. 2173, 60 L.Ed.2d 1052 (1979)………………………… 9

5
United States v. Miller, 688 F.2d 652 (9th Cir. 1982) ……………………………… 3

6
United States v. Mitchell, 502 F.3d 931 (9th Cir. 2007) ………………………… 9

7
United States v. Reed, 15 F.3d 928 (9TH Cir. 1994)……………………………… 3, 8

8
United States v. Sherwin, 539 F.2d 1 (9th Cir. 1976) ……………………………… 9

9
United States v. Taoist, 733 F.3d 816 (9th Cir. 2015) ……………………………… 8

10
United States v. Valen, 479 F.2d 473 (3rd Cir. 1973) ……………………………… 3, 4

11
United States v. Walther, 652 F.2d 788 (9th Cir. 1981…………………………… 4, 8, 9

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.

## PRIVATE PERSON SEARCH ISSUE

Defendant has moved to suppress evidence on the ground that it was the product of an illegal search by a private entity acting as an agency of the Government.

When the motion was first filed, counsel for defendant relied on a series of emails between an individual referred to as Source 62, who has been identified as Justin Meade, a supervisor at Best Buy.  Since the motion was filed, new information has been obtained from the government in the form of the informant file for Source 62/Meade.  This new informant file strongly buttresses defendant's position that the alleged "private entity" was actually doing the bidding of the Government in terms of searching for and discovering evidence of potential contraband on customers of Best Buy who brought their computer in for repair, and that therefore the search by a Best Buy employee of Defendant's computer was an illegal search without warrant and without any exception to the requirement of a warrant.  In fact, defendant maintains in this motion that the government has failed to meet its burden of establishing that the warrantless search was valid.

II.

## FURTHER EVIDENCE SUPPORTING DEFENDANT'S MOTION

The informant file for Source 62/Meade will be presented at the hearing as Defense Exhibit 152 and is being filed under seal at the request of the Government and identified as Exhibit A. This discovery proves that as of 2009, the FBI was dealing with a paid agent inside the Geek Squad, who was used for the specific purpose of searching client's computers for child pornography and other contraband or evidence of crimes.  (*See* e.g., Ex. A, p 3] ["type of information this CHS[1] is expected to provide . . . IINI - Possessors of Child Pornography" ]  This report of the FBI reveals that this agent "manages technicians that provide repair service of computers that come into the service center from across the country.  When CP is identified or potentially identified, the technicians stop

---

[1] "CHS" is short for "Confidential Human Source."  (See Ex. 152, p. 60)

work immediately and CHS notifies Agent.  CHS' reporting results in case initiation

nationwide." (Id., p. 3).  This CHS - who is Meade - had contact with the FBI on

numerous occasions, all as a part of the "Subprogram" IINI - Possessors of Child

Pornography.  On 7/27/10, 9/9/10, 9/20/10, 10/14/10, 10/15/10, 10/19/10, 10/25/10,

2/4/11, 2/8/11, 3/4/11, 3/29/11, 5/9/11, and other dates there was contact from Meade.

In May of 2011, the FBI approved continued operation of the CHS, also referred to

as "the source." *Id.*, p. 33.  In 2011, the report states that this source was paid $500 by the

FBI.  The payment period was from October 2010 to September 2011.  (*Id.*, pp. 39-40).

There is no information regarding payment for prior years, although the Government's

opposition brief states that this person, Justin Meade, was "a liaison to the FBI" starting in

2007 or 2008.  (Government Opposition, p. 2, lns. 21-25.)

On January 5, 2012, Meade contacted the FBI regarding Defendant's computer.

(*Id.*, p. 53).  On May 25, 2012, FBI Agent Riley wrote that Meade "has a preexisting overt

relationship with the FBI." (*Id.*, p. 60).  On November 9, 2012, this "source" was closed.

(*Id.*, p. 66).   The report does not disclose the reason, but gives possible reasons and also

states that the source was "moved within his company." (*Id.*, at p. 66).

In its opposition, the Government relies on both the Declaration of SA Riley, and

the Declaration of Justin Meade in order to explain what happened in this case.

Riley's declaration states that Meade told her he had received a hard drive with

"suspected images of child pornography" and Meade states that he interpreted technician

Westphal's notes to mean that the Defendant authorized the Geek Squad to search for

photos and videos on his hard drive in order to recover them.  (Government Opposition, p.

3.)

But it was, according to SA Riley, Meade who informed her what the images were

that Westphal had viewed on the hard drive thus validating that a search took place.  (*Id.*,

p. 4, lns. 1-2).

1    Based on this information, and the fact that (the Government contends) Defendant

2    somehow "waived" his Fourth Amendment rights by agreeing in general to the Geek

3    Squad policy to report child pornography to the Government if it was found, the

4    Government cites a series of distinguishable cases in which the Courts held the search by

5    a private person was not to be treated as a Governmental search under the Fourth

6    Amendment.

7        The Government states that the test for whether a private person is acting as a

8    government agent is (1) whether the government knew of and acquiesced in the individual

9    conduct, and, (2) whether the party conducting the search intended to assist law

10   enforcement.  (Quoting *United States v. Reed*, 15 F.3d 928 at 930-931). (*Id.*, p. 5, lns. 16-

11   21.)

12       While the Government does not address *United States v. Miller*, 688 F.2d 652 (9th

13   Cir. 1982), a Ninth Circuit case cited in Defendant's moving papers, it does cite a Third

14   Circuit case where the Government won a motion to suppress evidence seized by a private

15   person.  In that case, *United States v. Valen*, 479 F.2d 473 (3rd Cir. 1973), according to

16   the government, the searching party had been paid by the Government previously "for

17   doing something similar."

18       However, in *Valen*, the previous payment was for identifying the smell of narcotics

19   coming from luggage that was at an airport, not for searching that luggage. The

20   Government's characterization of the facts and holding in *Valen* is at the very least

21   misleading.   In *Valen,* an airport employee smelled the strong odor of marijuana, and then

22   opened luggage it was coming from.   However, he never advised the agents that he had

23   opened it, only that he smelled that odor.  The agents themselves smelled the same odor

24   and detained and searched the baggage without a warrant.  The primary issue in the case

25   was whether exigent circumstances justified the warrantless search.  The agents were not

26   informed that an airport employee had opened the luggage; thus they were not proceeding

27   based on the benefit of his search as is the case here.  The Third Circuit wrote:

28

1               "Moreover, the district court found that the status of Thompson

2               as a private party or a government agent was <u>immaterial,</u>

3               because Thompson had not told Clements that he had

4               previously opened the suitcases; he had told him only that he

5               had detected the odor of marijuana. We agree with the district

6               court's conclusion that no activity on the part of Thompson

7               tainted the subsequent activity of Agent Clements."

8  *Valen*, 479 F.2d at p. 470.[Emph. Added.]

9       Clearly, the prior payment was not dispositive in *Valen* because the employee had

10  only advised the DEA he smelled a similar odor.  Government agents were unaware of

11  and did not rely on the prior search of the airport employee.   Moreover, *Valen* has never

12  been cited favorably by the Ninth Circuit, which distinguished it in its *Walther* decision

13  (652 F.2d 788), cited by Defendant.

14       What the Ninth Circuit decision in *Walther* teaches, however, is that the intent on

15  the part of the private party to assist the Government is relevant, and in this case, Meade is

16  a paid "liaison" who had initiated numerous prior contacts with the FBI regarding child

17  pornography and who was identified by the FBI as a "source" in the FBI "subprogram"

18  titled IINI - Possessors of Child Pornography.  The source of the Government's evidence

19  concerning whatever it is that Westphal – the fired Geek Squad employee – did, is the

20  paid "liaison" Meade.

21       It is also known that Meade supervised Westphal, so Westphal's conduct was part

22  of what Meade was doing as a cooperator and informant for the FBI.

23       In *Walther*, the Ninth Circuit said that if a person had the intent to assist the

24  government, that intent must be considered when deciding a motion of this nature.  At the

25  evidentiary hearing, counsel for Dr. Rettenmair will have the opportunity to cross

26  examine both Meade and Agent Riley to flush out the exact nature of this relationship

27  between Meade and the FBI.

28

Contrary to the Government's argument, the Government need not know about a particular search in advance, before it can be held accountable under the Fourth Amendment for the search. This is just common sense where there is a well-established on-going relationship between Meade and the FBI. Rather, it is the fact that the private person was encouraged to assist law enforcement by conducting the intrusion that is important. And although the Government has not admitted that it told Meade to have his employees search for child pornography on client's computers, the combination of his history of doing so over several months leading up to the time when Defendant's computer was searched, together with the fact that the Government paid him in that capacity for undisclosed efforts taken that assisted the Government, translate into strong circumstantial evidence both that: (1) Meade and by extension his underlings were intending to assist the Government; and (2) by the history of a payment coinciding with prior actions to turn suspected child pornography over to the FBI, that the Government knew, or should have known, it was encouraging him to look for and report suspected child pornography on the computers that came in for repair.

While Exhibit A states that Meade was "initiated" in 2009, and only activated in 2010, the Government's brief concedes that he had a long standing relationship with the FBI, going back at least until 2007 - five years before the search of Defendant's hard drive in this case.

Moreover, it seems important that even though there are dozens of cybercrimes enforced by the FBI, the only such crime specified in the Geek Squad policy is child pornography, and the only crime for which Meade was a paid agent of the FBI was also child pornography. In addition, although the Government may claim that it is irrelevant that Meade was paid within a few months before the search of Defendant's computer, there is nothing in the discovery provided that would explain what he was paid for. If, as the Government contends, Meade was a well-meaning employee of Best Buy, who was merely following company policy, and if, further, he was just a good citizen, calling the FBI when his job required him to do so, why was he paid at all? What did he do for this

1    payment?   And did he have any hope or expectation of further payments, covering, e.g.,

2    the next year, in which Defendant's computer was searched by an employee who he

3    (Meade) directly supervised, and who has been fired.  At the hearing, counsel for Dr.

4    Rettenmaier will also offer into evidence a portion of the Website of Best Buy, which

5    states that Best Buy works "proactively with law enforcement to build good working

6    relationships to deter fraud and property theft."

7         One of the strongest exhibits demonstrating the true intent of Meade in his actions

8    as a supervisor at Best Buy is Exhibit 4 to Defendant's initial filing on this issue.  That

9    exhibit is a report from Agent Riley of another contact by Meade.  The exhibit shows that

10   Meade telephoned Agent Riley on 7/27/2010.  What is significant is the second page of

11   that exhibit where Meade informs Agent Riley that "all has been quiet for about the last 5-

12   6 months" but that "once school started again, they may see an influx of CP."

13        This demonstrates that Meade felt it was important to inform Agent Riley of two

14   things:  First that things have been quiet for some period of time, and, second that things

15   may pick up.  This demonstrates that Meade apparently felt it was important as to his

16   relationship with the FBI to assure Agent Riley that additional child pornography is likely

17   to be discovered when school starts again.

18        Why would Meade want to assure Agent Riley of that?  Clearly the answer is that

19   he wants to get paid again as he has in the past.  Page 24 of Exhibit A shows that Meade

20   was told that there was no promise of payment.  However, page 39 of Exhibit A shows

21   that on 8/5/2011, Agent Riley requested a payment to Meade in the sum of $500.  This

22   payment is less than one month after Meade advises Agent Riley that things have been

23   quiet but that things may pick up when school starts again.  No discovery received to date

24   indicates the basis for that payment on or about August 5, 2011, but it would stretch

25   credibility to argue that it was anything other than a reward for his finding and reporting

26   child pornography.

27        The exhibits attached to Defendant's initial filing on this issue show that there was

28   contact from Meade on five separate occasions. [See Exhibits 4 – 8 of Defendant's initial

6

1   brief on this issue].  One of those is Exhibit 4 to the initial filing by Defendant on this

2   issue, and that is the exhibit in which Meade informs Agent Riley that "all has been quiet

3   for about the last 5-6 months" and that "once school started again, they may see an influx

4   of CP."  Exhibit 9 to the initial filing by Defendant on this issue is a contact from Meade

5   on August 5, 2011, the same date that Agent Riley requested authorization for a payment

6   to Meade. [See Exhibit A, pp 39-40.] These facts strongly suggest that the request by

7   Agent Riley for payment of $500 to Meade on August 5, 2011 was for past cooperation by

8   Meade regarding locating child pornography and informing the FBI of what was located.

9          Nor does the Government establish that Meade was the only paid FBI "liaison"

10  with the Geek Squad.   Instead SA Riley only says that she was unaware of any other

11  payments and it is unknown if other Geek Squad employees were paid by the Government

12  in connection with the FBI subprogram to initiate child pornography prosecutions.  The

13  Government would have the Court believe that Meade did nothing in exchange for the

14  $500 payment he had received a few months before the search in this case and that by

15  paying him, the Government would not expect him to have a motive to continue to assist

16  the FBI in its quest for child pornography.   The facts support the contrary inference.

17         Moreover, only Meade, a motivated FBI operative working at the Geek Squad

18  facility, testifies to what Westphal's actions were based on, and only he asserts that

19  Defendant requested a data recovery on his computer, even though the actual problem for

20  which the machine was taken to Best Buy was that it would not turn on when the "on-off"

21  button was pushed.

22         The cases cited by the Government purportedly establish this was not a

23  governmental search.  Although the Government says "the Government had no

24  knowledge" that Best Buy was going to repair Defendant's computer, it certainly had

25  knowledge that the Geek Squad, of which Meade was a supervisor long before

26  Defendant's computer ever showed up, was going to repair computers generally, and

27  furthermore, it certainly knew that by paying Meade for something in connection with

28

1    its child pornography prosecution program[2] it was encouraging him to take actions to

2    assist the Government in the course of those computer repairs.  Further it is clear that the

3    FBI had knowledge well before Meade contacted Agent Riley about Dr. Rettenmaier's

4    computer that he regularly located computers with suspected child pornography and

5    immediately notified SA Riley of that fact.

6         The Government brief concedes the case law cited by the Government merely

7    "assumes" that a computer repair person is not a government agent (cf., *United States v.*

8    *Taoist*, 733 F.3d 816, 821-822 (9th Cir. 2015), but those cases do not involve a paid FBI

9    "CHS."  Nor will the Government explain why Meade was paid, if, as the Government

10   argues, he informed the FBI about his suspicion that the computer image seen was child

11   pornography solely as a means of "carrying out [store] policy."  (Cf., Government's

12   Opposition Brief, p. 13.)

13        The Government's citation of the "two factor" test it culls from *United States v.*

14   *Reed*, supra, leaves out the holding of the Ninth Circuit decision in *United States v.*

15   *Walther*, 652 F.2d 788, 791 (1981), which goes beyond actual advance knowledge of the

16   search.  (See *Id.*, at p. 5).

17        In *Walther*, the Court first acknowledged that there is no bright line test for this

18   issue:

19          "This court has recognized that there exists a 'gray area'

20          between the extremes of overt governmental participation in a

21          search and the complete absence of such participation. See

22          *United States v. Sherwin*, 539 F.2d 1, 6, n.5 (9th Cir. 1976) (en

23          banc). The resolution of cases falling within the 'gray area' can

24          best be resolved on a case by case basis with the consistent

25          application of certain general principles."

26   *United States v. Walther*, supra, 652 F.2d at 791.

27

28   _____

[2] In October 2011, the FBI paid Meade…for his work as a CHS." (<u>Government's Opposition Brief</u>, p.5, lns. 1-2).

The Court then went on to hold that:

> "The government must be involved either directly as a
> participant **or indirectly as an encourager of the private**
> **citizen's actions** before we deem the citizen to be an instrument of
> the state. *United States v. Gumerlock*, 590 F.2d 794, 800 (9th Cir.)
> (en banc), cert. denied, 441 U.S. 948, 99 S. Ct. 2173, 60 L.
> Ed. 2d 1052 (1979). The requisite degree of governmental
> participation involves some degree of knowledge and acquiescence
> in the search. *United States v. Sherwin*, supra, 539 F.2d at 6." *Id.*,
> 562 F.2d at 791-792. (Bold print supplied.)

Here then, the Government certainly had "some degree of knowledge" given its history of paying Westphal's boss as an agent under the child pornography prosecution program, and certainly had acquiesced in prior activities of Meade for which he had been paid to assist the FBI.

As in *Walther*, it was a pattern of searching activity that the FBI had knowledge about.  It did not need to know who Defendant was in advance, or have a particular intent that Meade and/or Westphal search his computer.

> "The DEA thus had knowledge of *a particular pattern of*
> *search activity dealing with a specific category of cargo*, and
> had acquiesced in such activity." *Id.*, 562 F.2d at 793.

Certainly, the FBI "had knowledge" of a certain pattern of search activity dealing with computers for child pornography, and certainly by paying Meade in connection with that program, the FBI acquiesced in that activity.

The government has raised no argument that this search should be justified based on a knowing waiver of Fourth Amendment rights. The government did in footnote 2, page 9 allude to such an issue, but has not argued waiver or consent as a basis for denying the motion to suppress. That is not a legal argument.  See *United States v. Mitchell*, 502 F.3d 931, 953 fn2 (9th Cir. 2007) ("However, '[t]he summary mention of an issue in a

1   footnote, without reasoning in support of the appellant's argument, is insufficient to raise

2   the issue on appeal."]  Since the government does not argue waiver as a basis for its

3   opposition to defendant's motion to suppress, we will not address the issue in this brief.

4       CONCLUSION

5       For the foregoing reasons, this Court is urged, after an evidentiary hearing, to

6   conclude that the search of Defendant's computer by Geek Squad personnel who were

7   under the supervision of a government agent, was a government search conducted

8   without a warrant and thus illegal.

9   Dated:  April 11, 2016

10                              Respectfully submitted,

11                              Bienert, Miller & Katzman

12

13                              James D. Riddet

14

15                              Attorneys for Mark A. Rettenmaier

10

308992-1