James D. Riddet, Esq. (SBN 39826)
jriddet@bmkattorneys.com
Kenneth M. Miller, Esq. (SBN 151874)
kmiller@bmkattorneys.com
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700
Facsimile  (949) 369-3701

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARK A. RETTENMAIER,<br><br>Defendant. | Case No. SA CR 14-0188 CJC<br><br>REPLY OF DEFENDANT TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR EVIDENTIARY HEARING AND SUPPRESSION OF EVIDENCE PURSUANT TO *FRANKS V. DELAWARE* (ECF No. 100); DECLARATION OF TAMI LOEHRS<br><br>Date: May 23, 2016<br>Time: 9:00 am<br>Courtroom: 9B |
|---|---|

Defendant Mark Rettenmaier, M.D., through his undersigned counsel of record, hereby submits his Reply Memorandum of Points and Authorities to the Government's Opposition to Defendant's Motion for Evidentiary Hearing and Suppression of Evidence Pursuant to *Franks v. Delaware* (Doc. No. 100 or "Opp.").

Dated: April 11, 2016

Respectfully submitted,

Bienert, Miller & Katzman

_____
James D. Riddet
Kenneth M. Miller
Attorneys for Mark A. Rettenmaier

# TABLE OF CONTENTS

Table of Contents .................................................................................. i

Table of Authorities ............................................................................. ii

Reply Memorandum of Points and Authorities ................................... 1

I. MATERIAL OMISSION RE UNALLOCATED SPACE ....................... 1
    A.   The Kayle Affidavit Omitted the Material Fact That the
        Images Were Found in Unallocated Space (Opp. §III.A.2.a) ........... 2
    B.   The Images Were Deleted (Opp. §III.A.2.b) .................................... 3
    C.   The Need for Specialized Tools to View the Images
        Is Material (Opp. §III.A.2.c) ............................................................ 4
    D.   Because the Images Were In Unallocated Space, There Is No
        Reasonable Inference That They Were Knowingly
        Possessed (Opp. § III.A.2.d) ............................................................ 4
    E.   The Omissions Were Intentional (Opp. § III.A.3) ........................... 6
    F.   Considering the Omitted Material, There Is No Probable
        Cause (Opp. § III.A.4.a-c) ............................................................... 7
        1. Deletion Does Not Show Possession ........................................... 7
        2. The Government Cannot Limit *Flyer* ........................................ 8

II. FALSE STATEMENTS RE CHILD PORNOGRAPHY ....................... 9
    A.   "9yoJenny" ....................................................................................... 9
    B.   Other Pornographic Images? .......................................................... 10

III. Conclusion ........................................................................................ 12

Case 8:14-cr-00188-CJC   Document 108   Filed 04/11/16   Page 3 of 15   Page ID #:821

# TABLE OF AUTHORITIES

*Jackson v. United States*, 353 F.2d 862 (D.C. Cir. 1965) .......................................... 11

*People v. Gingrich*, 862 N.W.2d 432 (Mich. App. 2014) ....................................... 11

*State v. Hall*, 2014 WL 2557847 (Ariz. Ct. App. June 3, 2014) ............................. 8, 9

*United States v. Aviles*, 170 F.3d 863 (9th Cir. 1999) ............................................ 6

*United States v. Bass*, 411 F.3d 1198 (10th Cir. 2005) .......................................... 7, 9

*United States v. Carpegna*, 2013 WL 4442036 (D. Mont. 2013) ................... 1, 4, 8, 9

*United States v. Craighead*, 539 F.3d 1073 (9th Cir. 2008) .................................. 4, 6

*United States v. De La Jara*, 973 F.2d 746 (9th Cir. 1992) .................................... 11

*United States v. DeLeon*, 979 F.2d 761 (9th Cir. 1992) ......................................... 6

*United States v. Flyer*, 633 F.3d 911 (9th Cir. 2011) ...................................... 1, 3, 6, 8

*United States v. Hay* 231 F.3d 630 (9th Cir. 2000) ................................................ 5, 6

*United States v. Kelley*, 482 F.3d 1047 (9th Cir. 2007) ....................................... 1, 5, 6

*United States v. Kuchinski*, 469 F.3d 853 (9th Cir.2006) ..................................... 1

*United States v. Moreland*, 665 F.3d 137 (5th Cir. 2011) .................................... 4

*United States v. Ramos*, 685 F.3d 120 (2d Cir. 2012) .......................................... 7, 9

*United States v. Zimmerman*, 277 F.3d 426 (3d Cir. 2002) ................................. 3

ii

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I.  MATERIAL OMISSION RE UNALLOCATED SPACE

The existence of child pornography in a computer's unallocated space, without more, is insufficient to prove knowing possession. *United States v. Flyer*, 633 F.3d 911 (9th Cir. 2011). Thus, after the Kayle Affidavit is supplemented with the fact that the alleged child porn was found in unallocated space, it is insufficient to show knowing possession. As one panel of the Ninth Circuit put it:

> The nature of unallocated space is important because using a computer to access the internet can result in the deposit of images constituting child pornography to the internet cache file on the hard drive, even if the user is not aware of the images. For instance, the criminal images may appear among many other non-criminal images on a website hosting adult pornography, then be downloaded automatically by the computer's operating system on the first occasion the webpage is displayed. For this reason, images that exist only in internet cache do not suffice, in and of themselves, to support a finding of knowing possession. *United States v. Kuchinski*, 469 F.3d 853, 863 (9th Cir.2006). And because images in unallocated space may be no more than old internet cache, they do not suffice either.

*United States v. Carpegna*, 2013 WL 4442036 at *4 (9th Cir. Aug. 14, 2013). *See also* Second Declaration of Tami Loehrs ("Loehrs Dec. II") at ¶3.

Further, the unknowing possession of child pornography will not establish probable cause to search the remainder of a computer (let alone the entire home of the computer's owner). *See United States v. Kelley*, 482 F.3d 1047, 1051 (9th Cir. 2007) (in reference to warrant for search of home computer, the "unwitting receipt of e-mail containing contraband will not support probable cause."). Accordingly, once the Kayle Affidavit is supplemented as *Franks* requires, the warrants for the Seagate Hard Drive and Dr. Rettenmaier's home are not supported by probable cause.

The government counters that the Kayle Affidavit told the Magistrate all he needed to know: because the Sea Gate Hard Drive crashed, "the information on the hard drive—including the suspected images of child pornography—was not accessible in the normal way," so it was submitted for "data recovery." Opp. at 3-4. Further, Agent Kayle's

1

1  understanding is consistent with the hard drive *crashing* because its file system was
2  "corrupted," causing the images to go into unallocated space. Opp. at 4. Therefore,
3  "there was no omission, material or otherwise, here." Opp. at 9. Additionally, the
4  government argues that if the files got into unallocated space because they were deleted,
5  then there is probable cause that Dr. Rettenmaier deleted them after knowingly possessing
6  them. Opp. at 17. The government's arguments are meritless.

   A. <u>The Kayle Affidavit Omitted the Material Fact That the Images Were Found In Unallocated Space (Opp. § III.A.2.a)</u>

   According to the government, the Kayle Affidavit did not need to state that the images were found in "unallocated space" because it stated that the hard drive was brought in for "data recovery." Opp. at 7-8. But saying that data was recovered through data recovery does not say that the data was recovered from a place on the computer where it is difficult (or impossible) to establish that the computer operator ever knowingly possessed the recovered images, i.e., its unallocated space.

   Moreover, "data recovery" is not synonymous with recovering data from unallocated space. Instead, it can apply to the recovery of data from allocated space, e.g., repairing a computer that will not start or that has a broken hard drive.[1] Simply saying

---

[1] "Data recovery" is a broad term that does not necessarily imply the recovery of data from unallocated space. *See* http://searchdisasterrecovery.techtarget.com/definition/data-recovery ("Data recovery is the process of restoring data that has been lost, accidentally deleted, corrupted or made inaccessible for *any reason*.") (emphasis added). Data recovery may be necessary, for example:
   (1) When a computer does not turn on or boot properly due to software failure. In that event, the "files remain inaccessible but intact on the hard drive." *See* http://www.wikihow.com/Recover-Data-from-the-Hard-Drive-of-a-Dead-Laptop; *see also* http://www.r-studio.com/File_Recovery_from_a_Computer_that_Wont_Boot.shtml (suggests using a "data recovery program with a startup version" when a system crash renders a computer unbootable);
   (2) When there has been physical damage to the drive storing the data. *See* http://www.computerhope.com/jargon/d/datareco.htm (data recovery includes replacing damaged parts of hard drive in order to access the desired data).
Best Buy's Geek Squad page reflects the multiple scenarios that may lead to using their data recovery services (including recovering files made inaccessible by "light mechanical errors" or "a failed or physically damaged drive"). *See* http://www.geeksquad.com/services/computers/data-recovery.aspx. *See also* Loehrs Dec. II at ¶4.

2

that images were recovered through data recovery does not give the Magistrate the essential information that he or she needs.

Finally, Agent Kayle's purported "understanding" is patently unreasonable. Agent Kayle claims she believed that because the Seagate Hard Drive crashed, Dr. Rettenmaier could not access his computer files ("including the suspected images of child pornography"), so he brought it to the Best Buy for data recovery. Kayle Dec. (Doc. 97-1) at ¶3. But it is absurd to believe that Dr. Rettenmaier brought his computer to Best Buy to have his child pornography recovered; especially since he was warned that "any product containing child pornography will be turned over to the authorities." Opp. at 4:27. Under the circumstances, the Magistrate needed to know where the images were actually found to decide if there was a reasonable inference that they were knowingly possessed.

B. The Images Were Deleted (Opp. § III.A.2.b)

The government initially takes issue with the claim that someone attempted to delete the image, because files can supposedly end up in unallocated space when the file system is "corrupted." Opp. at 10 and 16. The government is quibbling—any data that is in unallocated space had to be removed from allocated space, i.e. deleted. See Loehrs Dec. II at ¶2. The deletion could have been intentional, see Flyer, 633 F.3d at 918, which refutes the already weak basis for the Kayle Affidavit (i.e., that it is likely there was more child porn at Dr. Rettenmaier's residence because people with a sexual interest in children do not delete their child porn).[2] The Magistrate should have been informed of this fact.

Alternatively, the deletion could have been unintentional. The computer's operating system will regularly "cache" images from web pages, including contraband that the user may not have ever seen. See Loehrs Dec. II at ¶3; Carpegna, 2013 WL

---

[2] See e.g. United States v. Zimmerman, 277 F.3d 426, 433 n.4 (3d Cir. 2002) (No probable cause to search home for child porn, in part, because "conclusory statement[s] that people who collect child pornography commonly keep it in their homes is insufficient . . . to establish the nexus between the contraband and [the defendant's] residence.").

3

4442036 at *4. If the computer regularly deletes its internet cache, these images will end up in unallocated space. Loehrs Dec. II at ¶3. This characteristic of images in unallocated space is one of the reasons that the existence of contraband in unallocated space is insufficient to prove knowing possession. *Carpegna*, 2013 WL 4442036 at *4.

C. <u>The Need For Specialized Tools To View The Images Is Material (Opp. § III.A.2.c)</u>

The Magistrate also should have been informed that the images could only be viewed with specialized tools that Dr. Rettenmaier did not have. *See* Loehrs Dec. at ¶10. The government counters, "[o]ne wonders why these facts needed to be stated explicitly given that the affidavits clearly said that Rettenmaier took his hard drive to Best Buy/Geek Squad for 'data recovery services' and that the files were recovered by a Best Buy/Geek Squad technician." Opp. at 10. Even as paraphrased by the government, the affidavits do not inform the Magistrate that special tools are needed to view the images. Nonetheless, the answer to the government's rhetorical question is that because special tools were needed to view the images, the images were not in plain sight and further evidence is required to show the knowing possession required for probable cause.[3]

D. <u>Because the Images Were In Unallocated Space, There Is No Reasonable Inference That They Were Knowingly Possessed (Opp. § III.A.2.d)</u>

The government cites three cases in an attempt to minimize the importance of its omissions. Instead, these cases help demonstrate why the government's omissions are so important.

In *United States v. Craighead,* law enforcement learned that a computer using "IP address 68.0.185.111" was distributing child porn. 539 F.3d 1073, 1077 (9th Cir. 2008). Cox Communications owned that IP address and assigned it to Craighead's residence. *Id.* at 1078. Police used this information to obtain a search warrant for Craighead's home and they discovered child pornography. *Id.* at 1078-79. Craighead sought a *Franks* hearing

---

[3] *See United States v. Moreland,* 665 F.3d 137, 152 (5th Cir. 2011) (images in unallocated space insufficient to show possession because not in plain view, accessible only with specialized tools and no circumstantial evidence showing knowing possession).

4

because the Magistrate was not informed "someone else could have hacked into his computer and downloaded the named files" via "hacking, IP Spoofing, internet hijacking, and internet theft." *Id.* at 1079-80. The Ninth Circuit found that there was no material omission because affiants need not "provide general information about every possible theory, no matter how unlikely, that" is inconsistent with probable cause. *Id.* at 1081. Conversely, the fact the images were discovered on the Seagate Hard Drive's unallocated space is not general background information; it is a material fact under Ninth Circuit law.

Next, the government cites *United States v. Kelley,* which instructs that the key issue as to probable cause for a further search after discovering contraband on a computer is whether there is a reasonable inference that the contraband was willingly received. 482 F.3d 1047, 1049 (9th Cir. 2007). Kelley received child porn from two different sources under two separate screen names. One source was a known child porn trafficker. The other copied another recipient with the child porn, and that other recipient was a known child porn collector. Most of the child porn was of the same type—young boys. "As the affidavit explains, those who collect child pornography often collect addresses of persons with similar interests and as a means of referral, exchange, and profit." *Id.* at 1053. This evidence supported a reasonable inference that "Kelley was part of a network of persons interested in child pornography primarily involving young boys." *Id.*

Here, no such analysis was done. Answering questions like when was contraband downloaded, from where, was it ever opened, by whom and when, are answered by examining the metadata connected to a contraband file. The images on the Seagate Hard Drive were in unallocated space and the government did not offer any explanation to the Magistrate of what the metadata (if any) showed.[4]

Finally, contrasting *United States v. Hay* with this case also demonstrates the

---

[4] Whether metadata connected to images in unallocated space can ever be identified and analyzed is beside the point. While the defense submits that there was no metadata associated with these images, even if such metadata exists, no such evidence was presented to the Magistrate to show the circumstantial evidence of knowing possession essential to probable cause.

5

deficiencies of the Kayle Affidavit. 231 F.3d 630 (9th Cir. 2000). In *Hay*, investigators determined that nineteen specific images of child porn from a known trafficker "were downloaded directly into the 'incoming' directory of Hay's computer." *Id.* at 632-34. And Hay's website "described extensive contacts with children." *Id.* at 632-33. The Ninth Circuit found probable cause to search his home and computer because investigators could determine who sent it, when it was sent and that Hay could access it. There was also evidence of Hay's "extreme" interest in children. *Id.* at 634. There was no such evidence here.

While *Craighead, Kelley* and *Hay* do not support the government's arguments, they do highlight the type of circumstantial evidence necessary to support the inference of knowing possession essential to probable cause. There was no such evidence here.

E. <u>The Omissions Were Intentional (Opp. § III.A.3)</u>

Agent Kayle is a self-described expert on child pornography and computers working for a federal law enforcement agency and stationed within the Ninth Circuit. *See Franks* Motion, Exhibit A at 2, 6-8 and 11-21 (¶¶1, 12-17 and 24-26). *Flyer* holds that the mere existence of child pornography on a computer's unallocated space is insufficient, as a matter of law, to prove the knowing possession of child porn. *Kelley* recognizes that unknowing possession does not establish probable cause. It is unfathomable that the importance of unallocated space was lost on Agents Kayle or Riley (especially since Agent Kayle covers it in her grand jury testimony and Agent Riley addresses it in her EC.).

Even if FBI agents who swear out search warrant affidavits in child-porn cases in the Ninth Circuit do not keep up on Ninth Circuit law as to what is sufficient for probable cause, Agent Kayle is nevertheless responsible for the information Agent Riley possessed. *See United States v. Aviles,* 170 F.3d 863, 867 (9th Cir. 1999); *United States v. DeLeon,* 979 F.2d 761, 764 (9th Cir. 1992). Agent Riley knew the image was in unallocated space and special tools were required to view it—she says so in her EC. The importance of unallocated space is so obvious to law enforcement and critical to the issue of knowing

6

possession that its omission strongly suggests an intent to deceive. At a minimum, the omission was reckless.[5]

### F. Considering the Omitted Material, There Is No Probable Cause (Opp. § III.A.4.a-c)

#### 1. Deletion Does Not Show Possession

The government argues that if the files were in unallocated space because they were deleted, there is probable cause to believe Dr. Rettenmaier deleted them. This is because: (1) Dr. Rettenmaier submitted the hard drive for data recovery repair; and, (2) the files were found after the data recovery service was performed. Opp. at 17.

However, the two cases the government cites to support its argument that deletion of the alleged child porn shows knowing possession, actually highlight the deficiencies in the Kayle Affidavit as to knowing possession. In *United States v. Ramos*, 685 F.3d 120, 123 (2d Cir. 2012), the defendant was on parole for sexually abusing his sisters. A forensic analysis of his computer revealed 140 deleted child-porn images. *Id.* at 125. The Second Circuit found sufficient evidence that he "possessed" the deleted child porn images, because: "[t]he browsing history on his desktop computer showed that Ramos intentionally searched for child pornography on the internet"; he viewed 140 images and knew they were saved to his computer because he told law enforcement they would probably find child pornography on his computer; and, he attempted to delete the child pornography and his browser history. *Id.* at 131-32. Conversely, there was no evidence that Dr. Rettenmaier (or anyone in his household) had ever viewed child pornography, searched for it on the internet or deleted their web-browser history.

Likewise, in *United States v. Bass*, 411 F.3d 1198 (10th Cir. 2005), defendant was a member of an e-mail group called "Candyman" for people with an interest in child porn. Two thousand images of child porn were found in the allocated space and 39 images were

---

[5] The deceptiveness of the omission was compounded when Agent Kayle described how "remnants" of electronic files can be recovered even after they have been deleted, without explaining that the images Agent Riley viewed on the Seagate Hard Drive were just such remnants. Exhibit A at 16 (¶26.d). The Magistrate was left to conclude the images on the Seagate Hard Drive were more than mere remnants.

7

His computer had two programs called "Window Washer" and "History Kill" that he admitted he used to remove child porn from his computer so his mom would not see it. Bass admitted he knowingly viewed the images on the internet, but claimed that he did not knowingly possess the images on the computer because he did not know they were automatically downloaded to the computer. The Tenth Circuit found the fact that he was using programs to remove the images showed he knew they were automatically downloaded, so he knowingly possessed them. *Id.* at 1201-1202. But here, there was no evidence that Dr. Rettenmaier was a member of a child-porn viewing group, had admitted he viewed child porn, admitted he had deleted child porn or possessed programs on his computer used to delete child porn.

### 2. The Government Cannot Limit *Flyer*

The government cites *United States v. Carpegna,* 2013 WL 4442036 (D. Mont. 2013), in which the district court distinguished *Flyer* because, in addition to images being on the unallocated space of his computer, Carpegna: "searched the internet using search terms that included where to buy child porn, pre-teen sex and Lolita sex, among others" over an extended period of time; and, he admitted that he deleted the images after viewing them. *Id.* at *3. There was also evidence that while viewing the child pornography, Carpegna could have printed or downloaded the images, if he had wanted. There was evidence that he destroyed a different computer after his girlfriend found child pornography on it. And there was evidence that he "deleted his browsing records with some regularity." *Id.* at *5.

*Carpegna* is obviously distinguishable from our case because of evidence that Carpegna sought out child pornography. But it is important for pointing out the type of evidence the government should have presented to the Magistrate to justify its search warrant application, *i.e.,* evidence that someone in Dr. Rettenmaier's home had an interest in children, had searched the internet for child pornography and/or that that person then deleted the search history. Of course, there was no such evidence before the Magistrate.

8

The government also cites *State v. Hall,* 2014 WL 2557847 (Ariz. Ct. App. June 3, 2014), in which an appellate court upheld a conviction for possession of child pornography in unallocated space after a government witness testified he was able to "partially recreat[e] the file system as it existed in the allocated space" and was thus able to determine that the child pornography was "created, modified, and access[ed] by defendant]." *Id.* at *3. Regardless of the validity of *Hall's* factual findings about unallocated space (or its precedential value), the Kayle Affidavit does not describe where the images on the Seagate Hard Drive were "created, modified, or accessed", so it does not create a reasonable inference that the images were knowingly possessed. So this case is distinguishable from *Hall.* Instead, it is analogous to *Flyer* because the images were in unallocated space with no metadata attached; the Magistrate should have been so informed.

Like *Carpegna, Hall* is instructive for what the government should do in these situations, if able; that is, identify any metadata from the images in the unallocated space to demonstrate for the Magistrate that these images were accessed by the defendant. The government obviously did no such thing.

In summary, the government's argument that if the child porn was deleted, then there was probable cause to conclude that Dr. Rettenmaier deleted it, is shear speculation. Unlike *Ramos, Bass, Carpegna* or *Hall,* there was no evidence of how the images in the Seagate Hard Drive's unallocated space were deleted, when they were deleted, or why they were deleted.

II. **FALSE STATEMENTS RE CHILD PORNOGRAPHY**

A. "9yoJenny"

The Kayle Affidavit provides:

- Riley "observed what she believed to be child pornography on the hard drive";
- "[A]ll the photos depicted on the screen contained possible child

9

|   |   |
|---|---|
| 1 | pornography, the majority of which depicted the genitalia of young girls"; |
| 2 | and, |
| 3 | • "SA Riley noted one image in particular, named '9yoJenny.' This image is |
| 4 | a *fully nude*, white, prepubescent female on her hands and knees on a bed, |
| 5 | with a brown choker type collar around her neck." |

Exhibit A at 9-10 (¶¶18b and c) (emphasis added).

The government argues that "SA Kayle does not assert in the affidavit that this particular image does, in fact, meet the statutory definition of child pornography." Opp. at 21:7-9. But the Affidavit does say *every* image is possible child pornography; so, the Affidavit necessarily stated that this image was possible child pornography. Further, by saying most photos depicted genitalia, then describing this "fully nude" photo "in particular," the obvious import is that this photo depicted the child's genitalia. And considering that she is "on her hands and knees, on a bed, with a brown choker type collar around her neck," the import is that the photo is sexually suggestive. But as will be established at the hearing on this matter, this photo is not child pornography. Because the only reasonable way to read this description of the photo is as a description of child pornography, and because the image is not pornographic, the Kayle Affidavit did not give the Magistrate "sufficient evidence" to "make an *independent* determination about whether the image constituted child pornography," and clearly misled the Magistrate.

B. Other Pornographic Images?

Agent Riley's initial statement, reflected in an FBI 302, was that she had no notes from her review of the evidence, that she did not view anything other than 9yoJenny, and that she often cuts and pastes from other reports and therefore could have inadvertently included inaccurate information about reviewing photos other than 9yoJenny. *Franks* Motion, Exhibit D.

She recanted that statement in the same report. She now goes further in her declaration and says she recently discovered notes of her initial photo review at Best Buy that show she viewed other child images that were actually pornographic. Riley Dec.

10

(Doc. No. 99) at ¶¶6-7.  There is good reason for skepticism. *See United States v. De La Jara,* 973 F.2d 746, 751-52 (9th Cir. 1992) (district court should have rejected government's attempt to shore up its defense to suppression motion with different version of officer's testimony that contradicted his earlier, contemporaneous report).

Agent Riley's original statement is credible because it was against her interest to admit her report may have been wrong because she often cuts and pastes from other reports.  Further, the idea that she did not realize that her hand-written notes were attached to her copy of the EC (which she claimed to have reviewed in a prior report) strains credibility. *Jackson v. United States,* 353 F.2d 862, 865-67 (D.C. Cir. 1965) (court may reject testimony "which seems highly questionable in the light of common experience and knowledge.")  Most important, the notes themselves raise serious issues, including:

- Why is there no reference to 9yoJenny in the notes?  If Agent Riley's notes relate to her review of images at Best Buy, one would expect them to mention the only image she described in her EC.
- Why are none of the images described in the notes reflected in the EC or the Kayle Affidavit?  Such obvious references to child pornography would have offered needed support to the warrant application that was lacking.
- What are the numbers associated with the images, as reflected in the notes?  Agent Riley describes them as "file name[s] or other information associated with each respective image." Riley Dec. (Doc. No. 99) at ¶7.  But Agent Riley has given contradictory and incredible explanations of where these numbers came from.  It appears that these numbers could not have been seen with those pictures at Best Buy, but instead, they would have been the product of a subsequent search.  If that search occurred after the warrant was obtained, the results are irrelevant to the *Franks* issue (because they do not shed light on probable cause for the warrant).  If the search occurred before the warrant was obtained, then it was a warrantless search and there is a separate basis to suppress the computer evidence. *See People v. Gingrich,* 862 N.W.2d 432, 436-438 (Mich. App. 2014) (attaching computer to machine to open computer's files is a search that must be

authorized by warrant or exception to warrant requirement). If necessary, the defense will bring an appropriate motion.[6]

• Why don't the notes say the images are "partial" or "cropped" as Agent Riley has repeatedly described the other images of possible child pornography that she supposedly viewed at Best Buy. See Riley Dec. (Doc. No. 99) at ¶5; *Franks* Motion, Exhibit D.

In short, an evidentiary hearing is necessary to sort out what images Agent Riley reviewed and when she reviewed them.

### III. CONCLUSION

Dr. Rettenmaier is entitled to an evidentiary hearing to establish that the Kayle Affidavit intentionally or recklessly: (1) omitted the material fact that the alleged child porn was discovered in unallocated space and the consequences of that fact; and, (2) makes the false, material claim that Agent Riley viewed actual child pornography on the Seagate Hard Drive at Best Buy. Either of these *Franks* violations requires that all fruit of the Kayle Affidavit (including any evidence discovered on the Seagate Hard Drive and any evidence discovered in the search of Dr. Rettenmaier's residence) be suppressed.

Dated: April 11, 2016

Respectfully submitted,

Bienert, Miller & Katzman

_____
James D. Riddet
Kenneth M. Miller
Attorneys for Defendant

308894-1

---

[6] The EC from Agents Riley to Kayle states that "[o]nce back at the Louisville office the hard drive was attached to a forensic write blocker, a scan was performed with a preview tool." Based on the above, it now appears that "preview" may have actually been a full blown search of the computer. Accordingly, the defense has requested that the government provide: (1) the name and serial number of the preview tool that was used; (2) any and all notes or reports of this activity by the FBI at the Louisville office; and, (3) the names of any personnel that were involved in that scan with a preview tool and whether or not any of them have been subpoenaed to be at the hearing.